UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
IN RE:

    DONALD L. GREEN                           CASE NO. 06-31615

                          Debtor                  Chapter 13
----------------------------------------------------------
APPEARANCES:

MARK W. SWIMELAR, ESQ.
Chapter 13 Trustee
250 South Clinton Street, Suite 203
Syracuse, New York 13202

BENTKOFSKY & CHAMPION, PLLC         ERIN P. CHAMPION, ESQ.
Attorneys for Debtor                           Of Counsel
144 Genesee Street, Suite 407
Auburn, New York 13202-3511

MILLER & MEOLA                             JOHN M. DUBUC, ESQ.
Attorneys for M&T Bank                      Of Counsel
14 Corporate Woods Boulevard
Albany, New York 12211

EDWARD J. FINTEL & ASSOCIATES       MICHELLE C. MARANS, ESQ.
Attorneys for M&T Bank                      Of Counsel
430 East Genesee Street, Suite 205
Syracuse, New York 13217-6451

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

      Before this Court is an Objection to Confirmation of Donald L. Green's ("Debtor")

Chapter 13 Plan ("Plan") filed by M&T Bank ("M&T") on May 31, 2006, Debtor's Affidavit in

Response to Objection by M&T filed on June 16, 2006, a Supplemental Affirmation to M&T's

Objection filed on July 31, 2006, and Debtor's Supplemental Affidavit responding to M&T's

Objection, filed on August 3, 2006.

The Court heard oral argument on this contested matter at its regular motion term in Syracuse, New York on August 22, 2006. Upon conclusion of the August 22nd hearing, the Court indicated that it would reserve decision on this matter.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A),(B) and (O).

## FACTS

On or about July 8, 2004, Debtor purchased a 2001 Starcraft Travel Trailer ("Trailer"). M&T financed this purchase, and duly perfected its purchase money security interest in the Trailer.

Debtor filed his Chapter 13 petition on May 4, 2006, less than 910 days following the Debtor's purchase of the Trailer. M&T filed a proof of claim on May 12, 2006, in the amount of $10,578.44.

In his Schedule B, Debtor lists the value of the Trailer at $6,800.00. In his Plan filed on May 4, 2006, Debtor proposed to value M&T's allowed secured claim at $6,800.00 plus 6% interest.

## **ARGUMENTS**

M&T objects to Debtor's use of § 506(a) of the Bankruptcy Code (11 U.S.C. §§101-1330) ("Code") to bifurcate its claim into an allowed secured claim and an allowed unsecured claim, with the Debtor treating the allowed unsecured portion of the claim (the difference between the $10,578.44 proof of claim and the $6,800.00 value, or $3,778.44) as an unsecured obligation, to be paid at approximately 40% under the Plan. M&T points to the new "hanging paragraph" of § 1325(a):[1]

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

M&T asserts that the purchase money security interest securing the subject loan was incurred within the 910 day period specified by Code § 1325(a), and that the Trailer is a motor vehicle as defined in 49 U.S.C. §30102. That statue defines a motor vehicle as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and

---

[1] This provision is called a 'hanging paragraph' because it was appended to section 306 of BAPCPA without specifying a particular subsection of Code § 1325(a) to which the amendment applied. *See* Henry E. Hildebrand, III, *Getting Noticed: The New Notice Requirements of Section 342*, 13 Am. Bankr. Inst. L. Rev. 533, n27; *see also* Timothy D. Moratzka, *The Hanging Paragraph and Cramdown: 11 U.S.C. §§ 1325(a) and 506 after BAPCPA*, 25-4 ABIJ 18 (stating that "[i]n the uninformed rush by Congress to prevent bankruptcy abuse, § 1325(a) of the Bankruptcy Code was amended by BAPCPA to include a hanging paragraph at the end of § 1325(a)(9).")

highways, but does not include a vehicle operated only on a rail line." 49 U.S.C. §30102(6)

As a result, M&T contends that Code § 506(a) does not apply to its claim in this case, and that Debtor must, pursuant to the language in the new hanging paragraph in Code § 1325(a), treat M&T's entire claim as an allowed secured claim. *See In re Trukowitch*, Bankr. LEXIS 3152 (Bankr. E.D. Wis. 2006) (holding that "...the language of the [Code § 1325(a)] hanging paragraph is not ambiguous. If §506 does not apply, there can be no bifurcation of the claim, whether or not the collateral is worth less than the claim and whether or not the collateral is surrendered.")

M&T also argues in its May 31, 2006 Objection, presumably in the alternative, that the 6% interest rate called for in Debtor's Plan for payment of secured claims does not comport with the Supreme Court's decision in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), which calls for a "risk plus" method of interest rate determination for secured claims in a Chapter 13 bankruptcy plan. Debtor did not address this argument in its responsive papers, and it was not argued at the August 22, 2005 hearing.

Debtor argues that the language of the hanging paragraph in Code § 1325(a) does not prevent Code § 506 from being applicable in this case, because the Trailer is not a "motor vehicle" as that term is defined in 49 U.S.C. § 30102. In particular, Debtor claims that the Trailer is not "manufactured primarily for use on public streets, roads, and highways..." 49 U.S.C. § 30102(6). Rather, Debtor argues that the Trailer was "manufactured primarily as a temporary living quarters while remaining stationary." *See* Debtor's Aff. in Response to Objection by M&T, ¶ 4.

**DISCUSSION**

Both parties agree that the only issue which determines whether M&T Bank's claim can be bifurcated pursuant to Code § 506 is whether the Debtor's Trailer is a motor vehicle as that term is defined in 49 U.S.C. § 30102(6).

Neither party submitted any case law to support their respective positions.

<u>Statutory and Regulatory Definitions</u>

The section of Title 49 which contains the definition of 'motor vehicle' referenced in the hanging paragraph of Code § 1325 is 49 U.S.C. § 30101 *et seq*. (formerly 15 U.S.C. § 1381 et *seq*.). These sections of Title 49 codify the National Traffic and Motor Vehicle Safety Act of 1966, P.L. 103-272, 108 Stat. 745 ("Safety Act" or "National Traffic and Motor Vehicle Safety Act of 1966").

The agency to which authority has been delegated to carry out the Safety Act is the National Highway Transportation Safety Administration ("NHTSA"). *See* 49 CFR § 1.50(a).

In order to obtain additional insight as to whether Debtor's Trailer falls under the §30102(6) definition of a motor vehicle, the Court turns to the definitions contained in Chapter V, part 571 of the NHTSA Federal Motor Vehicle Safety Standards. There we find the following: "*Trailer* means a *motor vehicle* with or without motive power, designed for carrying persons or property and for being drawn by another motor vehicle." 49 CFR § 571.3(b) (emphasis added). This definition is of little help, however, as it contains the term 'motor vehicle' in the definition, thus assuming we have already established the status of the vehicle in question.

Further review of the NHTSA regulations yields the following definition: *"Camper* means

6

a structure designed to be mounted in the cargo area of a truck, or attached to an incomplete vehicle with motive power, for the purpose of providing shelter for persons." 49 CFR § 575.103(d) (emphasis added). However, even if we were able to fit Debtor's Trailer into this definition (a matter of some doubt, as the issue arises as to what constitutes an 'incomplete vehicle,' and whether that is what pulls Debtor's Trailer) we still do not establish that the Trailer is a motor vehicle. This is because "NHTSA classifies motor vehicles as passenger cars, multipurpose passenger vehicles[2], trucks, buses, motorcycles, and trailers." *See* NHTSA Legal Interpretation Letter #206, September 9, 1994. Thus a camper, as defined by the NHTSA, does not fall within the ambit of the definition of a motor vehicle under 49 U.S.C. § 30102(6)[3].

However, the matter may not be as simple as that. A review of several Legal Interpretation Letters issued by the Chief Counsel of the NHTSA concerning whether various 'on-road, off-road' vehicles meet the 49 U.S.C. § 30102(6) definition of a motor vehicle yields an interesting array of findings. *See* NHTSA Legal Interpretation Letter #VSA, April 1, 2004 (stating that a trailer-mounted aerial work platform used to lift personnel and materials to elevated work locations was not a motor vehicle "as that term is defined in the Safety Act."); *see also* NHTSA Legal Interpretation Letter #108, May 4, 1999 (stating that a radar system mounted on

---

[2] A multipurpose passenger vehicle is "a motor vehicle with motive power, except a low-speed vehicle or trailer, designed to carry 10 persons or less which is constructed either on a truck chassis or with special features for occasional off-road operation." 49 CFR § 571.3 (b).

[3] However, despite the fact that campers do not fall under the 49 U.S.C. §30102(6) definition of a motor vehicle, NHTSA regulations do apply to 'slide-in campers' ("structures having a roof, floor and sides, designed for the purpose of providing shelter for persons to be mounted on and removed from the cargo area of a truck by the user." NHTSA Legal Interpretation Letter #302, July 27, 1989). Apparently, NHTSA's rule making authority extends to vehicles not defined as 'motor vehicles' pursuant to § 30102(6).

7

a trailer "used by municipalities to determine the speed of passing motor vehicles" was a motor vehicle); NHTSA Legal Interpretation Letter VSA #571, February 11, 1988 (stating that a hydraulic logsplitter mounted on a frame carriage equipped with highway speed wheels and a trailer towing hitch was a motor vehicle); NHTSA Legal Interpretation Letter #VSA, September 15, 2005 (stating that a large kayak with retractable gear legs "for the purpose of not needing a trailer to transport the boat" was a motor vehicle).

In one Legal Interpretation Letter, NHTSA provided the following guidelines to assist in the determination of whether an on-road, off-road vehicle was a motor vehicle pursuant to § 30102(6):

> In instances where the agency is asked whether a vehicle is a motor vehicle when it has both off-road and on-road operating capabilities, and about which we have little or no information about the extent of the vehicle's on-road use, the agency has applied five factors in offering its advice. These factors are:
>
> > 1. Whether the vehicle will be advertised for use on-road as well as off-road, or whether it will be advertised exclusively for off-road use.
> >
> > 2. Whether the vehicle's manufacturers or dealers will assist vehicle purchasers in obtaining certificates of origin or title documents to register the vehicle for on-road use.
> >
> > 3. Whether the vehicle is or will be sold by dealers also selling vehicles that are classified as on-road vehicles.
> >
> > 4. Whether the vehicle has or will have affixed to it a warning label stating that the vehicle is not intended for use on public roads.
> >
> > 5. Whether states or foreign countries have permitted or are likely to permit the vehicle to be registered for on-road use.

NHTSA Legal Interpretation Letter #571, January 22, 2000.

8

Although not explicitly listed in this set of guidelines, several NHTSA Legal Interpretation Letters also mention the frequency with which the vehicle will be used on public roads as a determining factor in its classification as a motor vehicle pursuant to 49 U.S.C. § 30102(6).[4] Thus we have a general idea of the criteria which the NHTSA Chief Counsel uses in making its determination as to whether an on-road, off-road vehicle is a motor vehicle pursuant to § 30102(6).

Whether this Court has the information, expertise, or inclination to examine the Debtor's Trailer in light of these various criteria and make this determination is another matter.

The Parties' Interpretations of 'Primarily'

The salient difference between the Debtor's and M&T Bank's interpretations of 49 U.S.C. § 30102(6) hinges on their respective interpretations of the word 'primarily.' Debtor's argument is that the Trailer was primarily manufactured for the purpose of providing temporary living quarters, not to use the public streets, roads, and highways. M&T Bank's argument is that the Trailer was manufactured primarily for the purpose of moving the temporary living quarters from place to place.

---

[4] *See* NHTSA Legal Interpretation Letter #VSA, September 15, 2005 (stating that "in instances where vehicles...frequently use the highway going to and from job sites, and stay at a job site for only a limited time... such vehicles are considered motor vehicles.."); *see also* NHTSA Legal Interpretation Letter #108, May 4, 1999 (stating that "[t]hose vehicles are considered motor vehicles for purposes of the Safety Act since their on-road use is more than merely 'incidental.'"); NHTSA Legal Interpretation Letter #571, February 11, 1988 (stating that "when a vehicle frequently uses the highway going to and from job sites... it is the agency's opinion that the vehicle in question is a 'motor vehicle' in the statutory sense..."); NHTSA Legal Interpretation Letter #VSA, April 1, 2004 (stating that "if the agency were to receive additional information that the [vehicles] use the road more than on an incidental basis, then the agency would reassess this interpretation.").

The court in *Koehring Co. v. Adams*, U.S. Dist. LEXIS 17221 (E.D. Wis. 1978) faced a very similar set of facts. In *Koehring* the issue was whether certain mobile construction equipment, including mobile cranes, excavators and drills, met the definition of a motor vehicle as set out in 15 U.S.C. § 1381(3).[5] As in the case *sub judice*, the parties differed as to whether the equipment was "*primarily* manufactured for use on the public streets, roads, and highways..." 49 U.S.C. § 30102(6) (emphasis added).

The *Koehring* court examined two Supreme Court cases which dealt with the interpretation of the word 'primarily.' In *Board of Governors v. Agnew*, 329 U.S. 441 (1947), the Supreme Court addressed the use of the word 'primarily' in the context of whether a partnership was primarily engaged in the underwriting or distribution of securities. The Court found that

> It is true that 'primary' when applied to a single subject often means first, chief, or principal. But that is not always the case. For other accepted and common meanings of 'primarily' are 'essentially' (Oxford English Dictionary) or 'fundamentally' (Webster's New International). An activity or function may be 'primary' in that sense if substantial. If the underwriting business of a firm is substantial, the firm is engaged in the underwriting business in a primary way, though by any quantitative test underwriting may not be its chief or principal activity. On the facts in this record we would find it hard to say that underwriting was not one primary activity of the firm and brokerage another. If 'primarily' is not used in the sense we suggest, then the firm is not 'primarily engaged' in any line of business though it specializes in at least two and does a substantial amount of each.

*Koehring Co.*, U.S. Dist. LEXIS 17221 *7 (E.D. Wis. 1978) (quoting *Agnew*, 329 U.S. at 446)

Obviously this is the interpretation which M&T would choose. By this line of reasoning, the word 'primarily' can be interpreted to mean that the Trailer's ability traverse the public

---

[5] The precursor to 49 U.S.C. § 30102(6), containing a virtually identical definition of a motor vehicle.

highways need only be a 'substantial' feature of its manufacture, and Debtor's Trailer would easily fall under the § 30102(6) definition.

The second Supreme Court case the *Koehring* court examined was *Malat v. Riddell*, 383 U.S. 569 (1966). In *Malat* the Supreme Court addressed the use of the word 'primarily' in the context of an IRS provision regarding property "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." U.S. Dist. LEXIS 17221 *8 (citing 383 U.S. at 572). The Court held that

> the words of statutes-- including revenue acts-- should be interpreted where possible in their ordinary, everyday senses...Departure from a literal reading of statutory language may, on occasion, be indicated by relevant internal evidence of the statute itself and necessary in order to effect the legislative purpose... A literal reading of the statute is consistent with legislative purpose. We hold that, as used in [IRC] § 1221(1), 'primarily' means 'of first importance' or 'principally.'

*Koehring Co.*, U.S. Dist. LEXIS 17221 *8-9 (E.D. Wis. 1978) (quoting *Malat*, 383 U.S. at 571-572 (citations omitted).

This is clearly the interpretation of the word 'primarily' the Debtor would prefer. Under *Malat*, the primary purpose of the Trailer is to provide a living space for persons; not to traverse public highways or roads.

In *Koehring*, the court also had to contend with NHTSA Legal Interpretation Letters which held at the time that mobile cranes and the sort of equipment at issue in the case were, in fact, motor vehicles. *See* U.S. Dist. LEXIS 17221 *3. Despite this NHTSA opinion, and the defendant's position that the court should treat with deference an agency interpretation of a statute it was charged with enforcing, the *Koehring* court held that

> [t]he plain and ordinary meaning of the word 'primarily' is 'first' or

> 'foremost'...The record is clear here that the operation of these vehicles on public highways is decidedly an incidental activity....I find no reasonable justification to stretch the term 'primarily for use' on the highways to mean 'sporadic' or 'incidental' use on the highways.

*Id.* \* 11.

Relevant Case Law

There is a lack of bankruptcy court cases interpreting the 49 U.S.C. § 30102(6) definition of a motor vehicle. This may be attributable to the fact that the Code § 1325(a) hanging paragraph containing the reference to 49 U.S.C. § 30102(6) was added to the Code with the BAPCPA revisions which have been effective only since October 17, 2005. The pre-BAPCPA Code did not define the term 'motor vehicle', or reference another federal statute for its definition.

While there are bankruptcy cases concerning individual states' definitions of the term 'motor vehicle' as defined in the states' statutes, these would provide little guidance in interpreting 49 U.S.C. § 30102(6). Under New York Vehicle & Traffic Law, for example, a trailer is not a motor vehicle.[6]

The only relevant bankruptcy court decision this Court is aware of regarding the interpretation of the term 'motor vehicle' is *Illinois Marine Towing, Inc. v. Barnick* (*In re Barnick*), Bankr. LEXIS 2868 (Bankr. C.D. Il. 2006). In that case, the issue before the court was whether the term 'motor vehicle' as that term was used in (pre-BAPCPA) 11 U.S.C. § 523(a)(9),

---

[6] *See* N.Y. Veh. & T. §125 (stating that a motor vehicle is "every vehicle operated or driven upon a public highway which is propelled by any power other than muscular power..."). *See also Herrick v. Arborrio*, 144 Misc. 14, 16 (N.Y. Sup. Ct. 1932) (holding that the "[N.Y.] Vehicle and Traffic Law differentiates clearly between motor vehicles and trailers.")

included a motorboat.[7] Although this decision did not involve the interpretation of 49 U.S.C. § 30102(6), it does offer some insight into the matter at hand.

The *Barnick* court noted that there were lines of cases holding both that motorboats were motor vehicles within the meaning of 523(a)(9), and that they were not. *In re Barnick,* Bankr. LEXIS 2868 * 6-7.

The court noted that "the language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning." *Id.* at 9 (*citing Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 519 (5th Cir. 2004)). The court found that the Code was ambiguous regarding the definition of the term 'motor vehicle.'[8] The *Barnick* court also found that the ambiguity was not resolved by reference to "context or legislative history..." *In re Barnick*, 2006 Bankr. LEXIS 2868 at 35-36. The court then held that "ambiguities in the Bankruptcy Code must be resolved in favor of the debtor..." *Id.* at 36 (*citing New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund*, 886 F.2d 714, 719 (4th Cir. 1989)). This treatment of ambiguity in the Bankruptcy Code can be traced back to a 1940 Supreme Court decision by Justice Douglas, in which the value of a creditor's collateral was also at issue:

> Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property. There is no constitutional claim of the creditor to more than that. And so long as that right is protected *the*

---

[7] BAPCPA amended § 523(a)(9) to include the word 'vessel.' As a result, debts resulting from a debtor's operation of a motorboat causing injury or death are now included among the debts specifically not dischargeable under § 523.

[8] Interestingly, the *Barnick* court noted BAPCPA's attempt to define the term 'motor vehicle' in Code § 1325(a) by reference to 49 U.S.C. § 30102(6), and opined that "..the need perceived by Congress to define the term *motor vehicle* in section 1325(a) at least reflects an awareness of the term's ambiguity." *In re Barnick*, Bankr. LEXIS 2868 *19 (emphasis in original).

*creditor certainly is in no position to insist that doubts or ambiguities in the Act be resolved in its favor and against the debtor*. Rather, the Act must be liberally construed to *give the debtor the full measure of the relief afforded by Congress*, lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and letter of the Act.

*Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 279 (1940) (emphasis added).

A strong argument can be made that BAPCPA's importation into the Code of 49 U.S.C. § 30102(6) has resulted in an ambiguity which should be resolved in favor of the Debtor. An equally strong argument could be made that BAPCPA's drafters, since they did amend Code § 523(a)(9) to include the words 'vessel' and 'aircraft' in addition to the term 'motor vehicle', could have easily included a more precise definition in Code § 1325, rather than referencing the Statute codifying the National Traffic and Motor Vehicle Safety Act of 1966.[9]

## CONCLUSION

The Code's reference to a definition contained in a statute governing the safety of our nation's highways has led to an ambiguity when it is applied to a debtor's desire to avail himself of the provision of 11 U.S.C. § 506. This Court agrees with the *Barnick* court that ambiguities in the Code should be resolved in favor of the Debtor.

Also, this Court intends to afford the words in the Safety Act defining 'motor vehicle'

---

[9] The Connecticut legislature, for example, was able to define the term 'motor vehicle' with such specificity that it excluded, *inter alia*, "electric battery operated wheel chairs when operated by a physically handicapped person at speeds not exceeding fifteen miles per hour" as well as "snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour." *Ferreira v. Pisaturo*, 574 A.2d 1324, 1328 (Sup. Conn. 1989)(quoting Conn. Gen. Stat. § 14-1(a)(51)).

14

their 'plain meaning.' "[T]he plain meaning rule...demands that the express words of the statute be given their proper effect." *In re Carrow*, 315 B.R. 8, 15 (Bankr. N.D.N.Y. 2004) (citing *In re Porras*, 188 B.R. 375, 379 (Bankr. W.D. Tx. 1995)). The plain meaning of 'primarily' is 'chief' or 'foremost', and in this Court's view the Debtor's Trailer was manufactured primarily to provide temporary shelter for persons, not to traverse the public streets, roads and highways.[10]

Moreover, this Court sees no reason or need to engage in the type of equipment-specific regulatory determinations contained in the analyses of the NHTSA's Letters of Legal Interpretation regarding what constitutes a motor vehicle for the purposes of the Safety Act.

Finally, this Court believes interpreting the Safety Act's definition of 'motor vehicle' not to encompass Debtor's Trailer comports with the overall purpose and function of the Code. *See In re Victory Markets, Inc.*, 196 B.R. 6, 11-12 (Bankr. N.D.N.Y. 1996) (stating that "[e]ven within the fluctuating walls of the 'plain meaning' fortress a court should not resolve questions of statutory interpretation so that a particular Bankruptcy Code section conflicts and disturbs the overall purpose and function of the Code." (citations omitted)). In Justice Douglas' words, the Code's benefits to the debtor should not "be frittered away by narrow formalistic interpretations which disregard the spirit and letter of the [Code]." *Wright*, 311 U.S. at 279.

Thus, this Court holds that Debtor's Trailer is not a motor vehicle pursuant to the plain meaning of the words of 49 U.S.C. § 30102(6). Therefore the hanging paragraph of Code §

---

[10] In order to arrive at the interpretation of 'primarily' which the Supreme Court reached in *Agnew*, we would be forced to disregard the plain language contained in § 30102(6). "[T]he court may not disregard the plain language of a statute and exercise discretion where none is afforded." *In re Carrow, 188 B.R*. at 16 (citing *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999)). To interpret 'primarily' as the Supreme Court did in *Agnew*, as equivalent to 'substantial', would be to disregard the plain language of the statute.

15

1325(a) is not applicable to M&T Bank's claim, allowing Debtor to bifurcate the claim as set out in Code § 506(a).

Based on the foregoing, it is hereby

ORDERED that M&T Bank's Objection to Confirmation of Debtor's Plan based upon the hanging paragraph at the end of Code §1325(a)(9) is hereby dismissed; and it is further

ORDERED that Debtor's Chapter 13 Plan be added to the confirmation calendar of this Court to be held at the U.S. Courthouse, Syracuse, New York on January 23, 2007 at 2:00 p.m., at which time the Court will consider M&T's alternate objection based upon the proposed 6% interest rate provided for in the Plan in light of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

Dated at Utica, New York

this 12th day of January 2007

/s/    Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy